**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

_____

HUMBERTO GARCIA,

       Plaintiff,

     vs.                                    Civ. No. 2:23-545-WJ-GJF

JASWIR SINGH, and SUNSHINE
TRUCKING, LLC,

       Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION TO STRIKE EXPERT TESTIMONY**

**THIS MATTER** comes before the Court upon Plaintiff's Opposed Motion to Strike the

Opinions and Testimony of Dr. Paul Saiz (**Doc. 52**) as well as Defendants' Response in Opposition

(**Doc. 56**). Given the issues raised in the briefing—as well as the fact Dr. Saiz had not been

deposed—the Court held an evidentiary[1] hearing on June 10, 2024 (**Doc. 63**). Having reviewed

the parties' briefing and the applicable law, the Court finds that Plaintiff's motion is well-taken

and, therefore, is **GRANTED**.

## BACKGROUND

This is a personal injury case arising from an automobile accident that occurred on or about

July 11, 2021 (**Doc. 1 at 2–3**). Plaintiff alleges the accident caused "severe physical injuries." **_Id._**

---

[1] The Court docketed a "Notice of Hearing" on May 22, 2024 (**Doc. 63**). In that text entry, the Court stated that "NOTICE is given that the Court will hold an evidentiary hearing pursuant to _Daubert v. Merrell Dow Pharms., Inc._, 509 U.S. 579 (1993)." The Court also informed the parties to be prepared to discuss the "permissible scope of the examiner's expertise beyond spine surgery (such as: biomechanics, radiology, prognosis, medical costs, and opinions as to treating physicians level of care)."

    All of this to say, calling the June 10 hearing an "evidentiary hearing" is correct in name only. Defendants' counsel did not produce the doctor or provide any evidence for the Court to consider. Instead, the Court merely took judicial notice of Dr. Paul Saiz's curriculum vitae (**Doc. 56-2**)—which had been filed with Defendants' Response— as well as the fact he was previously qualified as an expert in "post-accident medical care . . . and whether future medical procedures will be reasonable and necessary," by U.S. District Judge James Browning. _See Rawers v. United States_, No. 19-cv-0034, 2020 U.S. Dist. LEXIS 174622, at *63 (D.N.M. Sept. 23, 2020).

Because Plaintiff placed his "physical injuries in controversy," Defendants filed a request for a Rule 35 examiner (**Doc. 27**). This motion was unopposed—and was quickly granted (**Doc. 29**). Defendants retained Dr. Paul Saiz, M.D., to conduct the Rule 35 examination (**Docs. 27 & 29**). He completed his report (**Doc. 52-1**) in March 2024.

After the Rule 35 report was issued, Plaintiff filed the instant motion and objected to some of Dr. Saiz's opinions under Federal Rule of Evidence 702 and *Daubert*. The outer limits of Dr. Saiz's opinions were the subject of the pleadings and the evidentiary hearing.[2] Specifically, Plaintiff objected to Dr. Saiz's opinions in the areas of biomechanics, radiology, the Plaintiff's prognosis, medical costs, and critiques of treating physicians (**Doc. 52 at 4–8**). Essentially, Plaintiff's counsel acknowledged Dr. Saiz is an expert[3] in one field—but then argued (persuasively) that does not mean his expertise necessarily extends to other areas.

Defendants' counsel disagreed—arguing that "Plaintiff is far too myopic in his view that this does not extend into medical costs, medical billing, and/or the efficacy of the documentation underlying them." **Doc. 56 at 5**. Defendants' counsel went on to argue that "Dr. Saiz's CV alone" shows his expertise. *Id.* **at 8**. And this is where Defendants' counsel lost the Court. Given the parties' disagreement on the scope of Dr. Saiz's expertise—the Court scheduled an evidentiary hearing and gave specific notice that said hearing was an evidentiary hearing. Although counsel was correct that Dr. Saiz's expertise could be "explored through deposition," *id.*, no such deposition was ever scheduled. Considering that Plaintiff had raised *Daubert* challenges to the

---

[2] Again, use of the phrase "evidentiary hearing" is generous; but that is how the hearing was docketed.

[3] Plaintiff's counsel correctly points out that Dr. Saiz is an orthopedic surgeon (**Doc. 52 at 5–6**), but that "he is not a biomechanical engineer." *Id.* **at 5**.

    In the Court's mind, this distinction is reminiscent of the tale of Humpty Dumpty—wherein after Humpty Dumpty sat on a wall and had a great fall, an orthopedic surgeon (like Dr. Saiz) could piece Humpty Dumpty back together again. But, that expert (again, Dr. Saiz) cannot opine on how or why Humpty Dumpty cracked in the particular way he did. Instead, such an expert would need a scientific background in a field such as biomechanics to be qualified to offer such opinion testimony.

admissibility of Dr. Saiz's expert opinion testimony stated in his Rule 35 report and considering that there was no deposition testimony of Dr. Saiz for the Court to consider, in the proper exercise of its gatekeeping role, the Court was left with but one option and that was to schedule a pretrial evidentiary hearing on the admissibility of Dr. Saiz's Rule 35 evaluation of Plaintiff. *See Daubert*, 509 U.S. at 597 (discussing the "gatekeeping role for the judge"); *Robinson v. Missouri Pac. R.R. Co.*, 16 F.3d 1083, 1089 (10th Cir. 1994) (suggesting that this gatekeeping role should be made "carefully and meticulously" during "an early pretrial evaluation of issues of admissibility").

## DISCUSSION

Under the well-established standard set forth in *Daubert*, qualified expert testimony: (1) must be based on sufficient facts or data; (2) must be the product of reliable principles and methods; and (3) the expert must have applied the principles and methods reliably to the facts of the case. *Daubert*, 509 U.S. at 597; Fed. R. Evid. 702. Depending on the nature of the issues presented and the expert's particular expertise, certain factors may or may not be pertinent to an evaluation of reliability—but "the purpose of the *Daubert* inquiry is always 'to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Hoffman v. Ford Motor Co.*, 493 F. App'x 962, 975 (10th Cir. 2012) (unpublished) (first citing *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222–23 (10th Cir. 2003); then quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)). But "cursory, absent, or 'off-the-cuff' determination[s]" are not enough—as district courts must make specific findings as to reliability and relevance from the record. *Hampton v. Utah Dep't of Corr.*, 87 F.4th 1183, 1201 (10th Cir. 2023).

A *Daubert* hearing is not required if the Court can make sufficient findings based upon the record. *See United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997); *Burlington Northern &*

*Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1031 (10th Cir. 2007) (a district court has discretion in deciding whether to hold *Daubert* hearing). But given the disputed opinions and the lack of a sufficient record in the pleadings, the Court ordered an evidentiary hearing (**Doc. 63**)—even though neither party specifically requested one. The hearing was ordered because the Court did not have "sufficient evidence to perform the task" of ensuring reliability and relevance. *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000).

Given the Plaintiff's objection to the expert's opinions, it was incumbent upon the proponent—Defendants—to prove admissibility. *See generally United States v. Nacchio*, 555 F.3d 1234 (10th Cir. 2009) (discussing the *Daubert* burden and the district court's gatekeeping role). But on June 10, 2024, Defendants presented only argument. No evidence.[4] No expert.

Dr. Saiz is a board-certified orthopedic surgeon and has previously given expert testimony in the field of orthopedic surgery in the United States District Court for the District of New Mexico. Accordingly, the Court takes judicial notice of Dr. Saiz's prior expert testimony and has no concerns about his qualifications as an expert in the field of orthopedic surgery. That said, the Court is still unaware of what qualifications or experience Dr. Saiz has in the field of biomechanics or radiology. Perhaps Dr. Saiz would have answered questions explaining that "Plaintiff's injuries are rarely caused by this type of accident," and such testimony would have been allowed. *See Gallagher v. Lucas*, No. 20-cv-72, 2020 U.S. Dist. LEXIS 202383, at *7 (W.D. Tex. Oct. 30, 2020). Or maybe he would have stated "there is no possible way the biomedical forces involved in the accident could have caused Plaintiff's injuries"—and the Court would have disallowed this opinion. *Id.* But no such testimony was presented. So, as it stands, the Court has no way to assess Dr. Saiz's reasoning or methodology underlying these opinions. Similarly, the Court has no idea

---

[4] The sum total of evidence presented or judicially noticed regarding Dr. Saiz is: (1) his report, (2) his CV, and (3) the fact he testified as a "post-accident medical care" expert in another case. *See supra* n.1.

if Dr. Saiz possesses sufficient knowledge, skills, training, or experience about medical billing. In his decades as a doctor, has he been intimately involved in medical billing? Or does his support staff handle that? Again—the Court is left to guess as to what Dr. Saiz might say (and what credentials support his ultimate opinion).

There is no evidence before the Court discussing Dr. Saiz's methods, testing, peer review, rate of error, independent research, or otherwise. This lack of a record makes it impossible for the Court to find "the reasoning or methodology underlying the testimony is scientifically valid" and "that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93.

Defendants were provided an opportunity[5] to sufficiently develop the record on these issues but failed to take advantage of that opportunity. *See United States v. Nichols*, 169 F.3d 1255, 1262 (10th Cir. 1999).

## CONCLUSION

For the reasons outlined in this Memorandum Opinion and Order, the Court hereby **GRANTS** Plaintiff's Motion to Strike the Opinions and Testimony of Dr. Paul Saiz (**Doc. 52**).

**IT IS SO ORDERED.**

/s/
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] As the Court stated at the hearing, if Dr. Saiz was not available to travel to Albuquerque to testify on June 10, 2024, Defense counsel could have filed a motion to continue the hearing. Defense counsel could have also requested that the hearing be set in Las Cruces—closer to where Dr. Saiz lives and works. Other options such as testimony utilizing video conferencing technology or having the *Daubert* hearing referred to Las Cruces Magistrate Judge Gregory Fouratt could have been explored.